# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| WHAM-O HOLDING, LTD. and INTERSPORT CORP. d/b/a WHAM-O, <br><br> Plaintiffs, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, <br><br> Defendants. | **FILED UNDER SEAL** <br><br> Civil Action No. |

## COMPLAINT

Plaintiffs Wham-O Holding, Ltd. and Intersport Corp. d/b/a Wham-O (collectively, "WHAM-O" or "Plaintiffs"), by and through their undersigned counsel, hereby bring this action against the Individuals, Corporations, Limited Liability Companies, Partnerships and Unincorporated Associations identified in Schedule A attached hereto (collectively, "Defendants"). In support of this Complaint, Plaintiffs allege as follows:

## I.    Introduction

This is a trademark infringement action against forty-three foreign-based online sellers who are engaged in active trademark infringement, including

counterfeiting of Plaintiffs' trademarks and goods. Defendants are infringing Plaintiffs' FRISBEE trademarks. Because the infringement and counterfeiting are ongoing, Plaintiff seeks immediate relief from the Court.

## II.    Jurisdiction and Venue

1.    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c), and this Court may properly exercise personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2) and Georgia's long-arm statute, O.C.G.A. § 9-10-91, since each of the Defendants directly targets consumers in the United States, including Georgia, through at least the fully interactive commercial internet stores operating under the Defendant aliases and/or the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Seller Aliases"). Specifically, Defendants are reaching out to do business with Georgia residents by operating one or more commercial, interactive internet stores through which Georgia residents can purchase products utilizing infringing versions of Plaintiffs' trademarks. Each of the Defendants has targeted Georgia residents by operating online stores that offer shipping to the United States, including Georgia, accept payment in U.S. dollars and, on information and belief, have sold products utilizing

2

infringing versions of Plaintiffs' federally registered trademarks to residents of Georgia. Each of the Defendants is committing tortious acts in Georgia, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Georgia.

## **PARTIES**

3.      For more than 70 years, WHAM-O  has manufactured and marketed some of the most recognizable consumer brands in the world, including brands, such as FRISBEE® flying discs, HULA HOOP® toy hoops, SLIP 'N SLIDE® water slides, BOOGIE® body boards, and more.

4.      The United States Patent and Trademark Office has granted registrations for Plaintiffs' FRISBEE trademarks ("FRISBEE Trademarks"). These include U.S. Reg. Nos. 679186, 970089, 3410998, and 4046202. The FRISBEE Trademarks are valid, subsisting, and in full force and effect:

| Trademark | Registration No. | International Class(es) | Goods and Services |
|-----------|------------------|------------------------|--------------------|
| FRISBEE | 679186 | 028 | Toy flying saucers for toss games |

| Trademark | Registration No. | International Class(es) | Goods and Services |
|---|---|---|---|
| FASTBACK FRISBEE | 970089 | 028 | Flying saucer used in sports games |
| ULTIMATE | 3410998 | 028 | Flying discs; toy flying discs and saucers used in sport and recreational activities and games |
| FRISBEE | 4046202 | 009 | Computer games and computer game programs, namely, video games and interactive video games for use with gaming consoles, cell phones, personal computers, and hand-held video game devices, downloadable software, namely, video games and interactive video games; sunglasses; decorative magnets; eyeglass cases; telephones; fashion eyeglasses; swimming goggles; snow goggles; diving goggles; goggles for sports; inflatable floatation devices |
| | | 014 | Precious metals and their alloys; horological and chronometric instruments; jewelry, costume jewelry; earrings; rings; medallions; non-monetary coins of precious metal; clocks, watches; stop watches; |

| Trademark | Registration No. | International Class(es) | Goods and Services |
|---|---|---|---|
| | | | ankle bracelets; body piercing rings and studs; and identification bracelets |
| | | 018 | Animal skins, hides; trunks and traveling bags; umbrellas; saddlery; luggage, sports bags, duffel bags, garment bags, backpacks, brief cases, fanny packs, handbags, luggage tags; knapsacks; tote bags; purses; wallets; credit card cases; gym bags; all-purpose sports gear carrying bags; dog leashes; shoe bags for travel; school bags; pet collars |
| | | 024 | Table linen, table cloths not of paper, towels; beach towels; bed linens; table linens; cloth banners; cloth pennants; woolen blankets, silk blankets, bed blankets; coverlets; cloth napkins; lap robes |
| | | 025 | Men's, women's and children's clothing, namely, bathing suits, belts, neckties, suspenders, bandanas, infant and toddler sleepwear, bathrobes, night shirts, pajamas and loungewear, beach cover-up dresses, cloth diaper sets, knit dresses with pants sets, shorts and top sets, skirt/panty combinations, socks, play suits, |

| Trademark | Registration No. | International Class(es) | Goods and Services |
|---|---|---|---|
| | | | coveralls, union suits, collarless shirts, shorts, pants and slacks, shirts; jackets, namely, wind-resistant jackets and nylon shells; sports uniforms; sweaters; parkas; turtlenecks; mittens; gloves; underwear; rompers; jerseys; headwear and scarves; ear muffs, ear bands and headbands; hosiery; rain ponchos and jackets; bath thongs; visors; aprons; ski and cloth bibs; T-shirts; sweatshirts; sweatpants; coats; pullovers; ski suits; golf shirts and hats; blazers; legwarmers; evening tops; jeans; leotards; workout and sports apparel, namely, tank tops, sports bras; ski masks; footwear, namely, shoes, boots, slippers, and beach sandals; headgear, namely, hats, caps, baseball caps |
| | | 028 | Board games, target games; decorations for Christmas trees; toy flying disks; sleds; toboggans; body boards; bags especially designed for surfboards; leashes used in conjunction with surfing; skim boards; surf boards; swim fins; dolls and stuffed toy animals; toy scale model vehicles; jigsaw puzzles; Christmas tree ornaments; commemorative sports balls; action puppets; inflatable toys; teddy bears; dartboard cabinets and darts; Christmas stockings; basketball backboards; yo-yos; action figures |

| Trademark | Registration No. | International Class(es) | Goods and Services |
|---|---|---|---|
| | | | and accessories therefore; marbles; sports balls; volleyball nets, tennis nets, nets for ball games; plastic toy hoops; toy foot bean bags; gymnastic equipment, namely, equipment for practicing body surfing out of the water; balloons; golf gloves; radio-operated toy vehicles; toys for pets; pinball machines; discuses; exercise equipment, namely, equipment for practicing body surfing out of the water; hand-held units for playing video games; inflatable float mattresses or pads for recreational use; inflatable inner tubes for aquatic recreational use; water toys; sand toys |

5.     As a result of Plaintiffs' substantial expenditures of time, money, and other resources developing, advertising, and otherwise promoting quality authorized products in association with the FRISBEE Trademarks ("FRISBEE Products"), the FRISBEE Trademarks have acquired substantial goodwill and secondary meaning. Plaintiffs have invested millions of dollars in advertising and promoting the FRISBEE Trademarks over decades. Products bearing the FRISBEE Trademarks are recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiffs. The FRISBEE Trademarks are famous marks within the meaning of 15 U.S.C. § 1125(c) and are widely recognized by the

general consuming public of the United States as a designation of source of Plaintiffs' goods.

6.    The FRISBEE Trademarks are valid, subsisting, unrevoked, and uncancelled and many have become incontestable pursuant to 15 U.S.C. § 1065. The registrations constitute prima facie evidence of the validity of the FRISBEE Trademarks, of Plaintiffs' ownership of the marks, and of Plaintiffs' exclusive right to use the registered marks in commerce in connection with the goods specified in the registrations pursuant to 15 U.S.C. § 1057(b).

7.    True and correct copy of the registration certificates for the FRISBEE Trademarks are attached as Exhibit 1.

8.    WHAM-O has made and continues to make considerable efforts to protect their interests in and to the FRISBEE Trademarks. No one other than WHAM-O and their licensees are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the FRISBEE Trademarks and/or Works without the express written permission of WHAM-O. Defendants are not now and have never been authorized licensees or distributors of FRISBEE Products.

9.    Defendants are individuals and business entities who, upon information and belief, are organized under the laws of and/or reside in various foreign jurisdictions, particularly China. Upon information and belief, Defendants operate and control the Seller Aliases identified in Schedule A. Defendants purposefully

direct their business activities toward the United States, including Georgia and this judicial district, through the operation of fully interactive commercial websites and online marketplace storefronts. Defendants' websites are accessible to Georgia residents, accept payment in U.S. dollars, offer shipping to Georgia addresses, and are specifically designed to attract U.S. customers. Each Defendant targets the United States, including Georgia, and has offered to sell and, on information and belief, has sold and continues to sell unauthorized and infringing versions of the FRISBEE Products to consumers within the United States, including Georgia and in this judicial district.

## FACTUAL BACKGROUND

10.      Prior to the proliferation of anonymous online marketplaces, Plaintiffs successfully enforced their intellectual property rights against identifiable infringers and counterfeiters through traditional legal channels. The rise of online retailing, coupled with the ability of e-commerce sites to hide their identities, has made it nearly impossible for policing actions to be undertaken since availing itself of takedown procedures to remove infringing products would be futile and commercially unreasonable given the sophisticated and coordinated mass counterfeiting operation that is occurring over the Internet. The aggregated effect of the mass counterfeiting that is taking place has overwhelmed Plaintiffs and their ability to police their rights against the hundreds of anonymous defendants which

are selling illegal counterfeit and infringing products at prices below the cost of Plaintiffs' Product:

**Plaintiffs' Product**



https://wham-o.com/collections/frisbee®.

**COUNTERFEIT/INFRINGING PRODUCT**

11.     The above example evidences an organized counterfeiting network utilizing unauthorized e-commerce storefronts designed to deceive consumers by appearing to sell authorized products.

12.     In an effort to illegally profit from the creative content of the FRISBEE Trademarks, Defendants have created numerous Seller Aliases and have designed them to appear to be selling authorized FRISBEE Products.

13.     The Seller Aliases share unique identifiers, such as design elements and similarities of the unauthorized products offered for sale, establishing a logical relationship between them, and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operation.

14.     Plaintiffs have suffered and continue to suffer immediate and irreparable harm through loss of control over their valuable intellectual property, diminution of reputation and goodwill, loss of quality control, impairment of licensing relationships and opportunities, and consumer confusion as to the source, origin, and quality of products bearing the FRISBEE Trademarks, for which there is no adequate remedy at law, thereby necessitating both immediate injunctive relief and monetary damages.

15.    The systematic and coordinated mass counterfeiting and infringement campaign conducted by Defendants has caused, and continues to cause, substantial and irreparable harm to Plaintiffs and their ability to police their rights against the hundreds and thousands of anonymous online sellers who are selling counterfeit and infringing products.

16.    To be able to offer the infringing products at a price substantially below the cost of original, while still being able to turn a profit after absorbing the cost of manufacturing, advertising, and shipping requires an economy of scale only achievable through a cooperative effort throughout the supply chain. As Homeland Security's recent report confirms, infringers act in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate brand owners while generating huge profits for the illegal pirating network:

> Historically, many counterfeits were distributed through swap meets and individual sellers located on street corners. Today, counterfeits are being trafficked through vast e-commerce supply chains in concert with marketing, sales, and distribution networks. **The ability of e-commerce platforms to aggregate information and reduce transportation and search costs for consumers provides a big advantage over brick-and-mortar retailers. Because of this, sellers on digital platforms have consumer visibility well beyond the seller's natural geographical sales area.**
>
> . . .
>
> Selling counterfeit and pirated goods through e-commerce is a highly profitable activity: production costs are low, millions of

potential customers are available online, transactions are convenient, and listing on well-branded e-commerce platforms provides an air of legitimacy.

. . .

The impact of counterfeit and pirated goods is broader than just unfair competition. Law enforcement officials have uncovered intricate links between the sale of counterfeit goods and transnational organized crime. **a study by the Better Business Bureau notes that the financial operations supporting counterfeit goods typically require central coordination**, making these activities attractive for organized crime, with groups such as the Mafia and the Japanese Yakuza heavily involved. Criminal organizations use coerced and child labor to manufacture and sell counterfeit goods. In some cases, the proceeds from counterfeit sales may be supporting terrorism and dictatorships throughout the world.

*See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, ([https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods](https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods)), at 10, 19 (emphasis added) attached hereto as Exhibit 3.

17.     The Seller Aliases share distinctive identifying characteristics and patterns, including identical design elements and similarities in the unauthorized products offered for sale, conclusively establishing a coordinated network of related operations arising from the same series of transactions or occurrences. Defendants deliberately employ sophisticated technological means and aliases to evade detection and liability by systematically concealing their true identities and the full scope and interworking of their illegal network. Despite deterrents such as takedowns and other measures, the use of aliases enables infringers to stymie authorities:

13

The scale of counterfeit activity online is evidenced as well by the significant efforts e-commerce platforms themselves have had to undertake. A major e-commerce platform reports that its proactive efforts prevented over 1 million suspected bad actors from publishing a single product for sale through its platform and blocked over 3 billion suspected counterfeit listings from being published to their marketplace. Despite efforts such as these, private sector actions have not been sufficient to prevent the importation and sale of a wide variety and large volume of counterfeit and pirated goods to the American public.

. . .

A counterfeiter seeking to distribute fake products will typically set up one or more accounts on online third-party marketplaces. The ability to rapidly proliferate third- party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders. Rapid proliferation also allows counterfeiters to hop from one profile to the next even if the original site is taken down or blocked. On these sites, online counterfeiters can misrepresent products by posting pictures of authentic goods while simultaneously selling and shipping counterfeit versions.

. . .

Not only can counterfeiters set up their virtual storefronts quickly and easily, but they can also set up new virtual storefronts when their existing storefronts are shut down by either law enforcement or through voluntary initiatives set up by other stakeholders such as market platforms, advertisers, or payment processors.

*Id.* at 5, 11, 12.

18.    E-commerce giant Alibaba has also made public its efforts to control infringement and counterfeiting on its platform. It formed a special task force that worked in conjunction with Chinese authorities for a boots-on-the-ground effort in China to stamp out counterfeiters. In describing the counterfeiting networks it uncovered, Alibaba expressed its frustration in

dealing with "vendors, affiliated dealers and factories" that rely upon fictitious

identities that enable counterfeiting rings to play whack-a-mole with authorities:

# Fighting China's counterfeits in the online era

Xinhua | Updated: 2017-09-19 14:20                    f  🐦 in +

BEIJING - A secret team in Chinese e-commerce giant Alibaba has the task of pretending to be
online consumers who test-buy purchases from the billion-plus products on its platforms.

…

Alibaba's Anti-Counterfeiting Special Task Force, formed last year, actively works with local
law enforcement agencies, said Qin Seng.

"After we clean up online shops selling counterfeits, the counterfeiters usually change their
identities and places of dispatch, using more covert means to continue selling online," Qin
said.

The team uses big data to identify counterfeits and the vendors, affiliated dealers and factories
suspected of producing or selling counterfeit items. They pass evidence to the public security,
administration of commerce and industry, quality inspection, food and drug supervision and
other law enforcement agencies. At the same time, they investigate the evidence in the field.

The team faces many risks in their offline probes.

"Most counterfeiting dens are hidden and well-organized. For example, we encountered a
village producing counterfeits. The villagers installed cameras everywhere and when they saw
outsiders entering, they became vigilant and even threatened us," Qin said.

*See* Xinhua, *Fighting China's Counterfeits in the Online Era,* China Daily (Sept.
19, 2017), available at www.chinadaily.com.cn/business/2017-09/19/content_32200290.htm (Exhibit 4).

19.    Plaintiffs have been and continue to be irreparably harmed through

loss of control over Plaintiffs' reputation, goodwill, ability to license, and the

quality of goods featuring the FRISBEE Trademarks, and through consumer

confusion as to the source, origin, sponsorship, and quality of products bearing

the FRISBEE Trademarks, as a direct result of the Defendants' willful infringing conduct. The rise of e-commerce as a method of supplying goods to the public exposes brand holders and content creators that make significant investments in their products to significant harm from counterfeiters:

> Counterfeiting is no longer confined to street-corners and flea markets. The problem has intensified to staggering levels, as shown by a recent Organisation for Economic Cooperation and Development (OECD) report, which details a 154 percent increase in counterfeits traded internationally — from $200 billion in 2005 to $509 billion in 2016. Similar information collected by the U.S. Department of Homeland Security (DHS) between 2000 and 2018 shows that seizures of infringing goods at U.S. borders have increased 10-fold, from 3,244 seizures per year to 33,810.
>
> …
> The rise in consumer use of third-party marketplaces significantly increases the risks and uncertainty for U.S. producers when creating new products. It is no longer enough for a small business to develop a product with significant local consumer demand and then use that revenue to grow the business regionally, nationally, and internationally with the brand protection efforts expanding in step. Instead, with the international scope of e-commerce platforms, once a small business exposes itself to the benefits of placing products online — which creates a geographic scope far greater than its more limited brand protection efforts can handle — it begins to face increased foreign infringement threat.
>
> . . .
> Moreover, as costs to enter the online market have come down, such market entry is happening earlier and earlier in the product cycle, further enhancing risk. If a new product is a success, counterfeiters will attempt, often immediately, to outcompete the original seller with lower-cost counterfeit and pirated versions while avoiding the initial investment into research and design.
>
> . . .

Counterfeiters have taken full advantage of the aura of authenticity and trust that online platforms provide. While e-commerce has supported the launch of thousands of legitimate businesses, their models have also enabled counterfeiters to easily establish attractive "store-fronts" to compete with legitimate businesses.

*Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (Exhibit 3) at 4, 8, 11.

20.    Not only are the intellectual property owners harmed, but the public is also harmed as well:

The rapid growth of e-commerce has revolutionized the way goods are bought and sold, allowing for counterfeit and pirated goods to flood our borders and penetrate our communities and homes. Illicit goods trafficked to American consumers by e- commerce platforms and online third-party marketplaces threaten public health and safety, as well as national security. This illicit activity impacts American innovation and erodes the competitiveness of U.S. manufacturers and workers. The President's historic memorandum provides a much warranted and long overdue call to action in the U.S. Government's fight against a massive form of illicit trade that is inflicting significant harm on American consumers and businesses. <u>This illicit trade must be stopped in its tracks</u>.

*Id.* at 3, 4. (Underlining in original).

21.    Plaintiffs' investigation shows that the telltale signs of an illegal counterfeiting and infringement scheme are present in the instant action. For example, Schedule A shows the use of store names by the Seller Aliases that employ no normal business nomenclature and, instead, have the appearance of being made up, or if a company that appears to be legitimate is used, online research shows that there is no known address for the company. Thus, the Seller

17

Aliases are deliberately operating deceptive online storefronts specifically designed to mislead consumers by appearing to sell genuine FRISBEE Products, while knowingly selling unauthorized, inferior counterfeit imitations of Plaintiffs' FRISBEE Products that illegally utilize the FRISBEE Trademarks ("Counterfeit Products").

22.     Screenshot evidence showing each Defendant on Schedule A selling Counterfeit Products is attached as Exhibit 2.

23.     The Seller Aliases also share unique identifiers, such as design elements and similarities of the Counterfeit Products offered for sale, establishing a logical relationship between them, and demonstrating that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences as required for permissive joinder under Federal Rule of Civil Procedure 20(a)(2). Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting and infringement operations.

24.     The Counterfeit Products for sale through the Seller Aliases bear similarities and indicia of being related to one another, demonstrating that the Counterfeit Products were manufactured by and sourced from a coordinated network, and that, upon information and belief supported by substantial evidence, Defendants constitute an organized group of infringers operating in deliberate

concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products.

25.    The Seller Aliases intentionally conceal their identities and the full scope of their counterfeiting and infringement operations in an effort to deter Plaintiffs from learning Defendants' true identities and the exact interworking of Defendants' illegal operations. Defendants often go to great lengths to conceal their identities by often using multiple fictitious names and addresses to register and operate their massive network of Seller Aliases.

26.    Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Seller Alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their massive infringement operation and to avoid being shut down.

27.    In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases involving online infringers systematically employ a variety of sophisticated tactics specifically designed to circumvent intellectual property enforcement efforts and evade detection. For example, infringers like Defendants will often register new online marketplace

accounts under new aliases once they receive notice of a lawsuit. Infringers also deliberately structure their shipments in small quantities via international mail as part of a calculated strategy to evade detection and enforcement by U.S. Customs and Border Protection, demonstrating their awareness of and intent to circumvent legal restrictions.

28.     According to a recent U.S. Customs and Border Protection report available at filing, e-commerce sales accounted for 13.3% of total retail sales in 2021, with second quarter retail e-commerce sales reaching $222.5 billion, demonstrating the massive scale of the online marketplace where infringement occurs. U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics* FY 2021 at 23. A true and correct copy of CBP's FY 2021 report is attached hereto as Exhibit 5.

29.     Further, infringers such as Defendants deliberately maintain a complex network of multiple credit card merchant accounts and third-party payment processing accounts, including PayPal, LLC ("PayPal") accounts, strategically concealed behind layers of payment gateways, specifically designed to evade detection and continue their infringing operations despite Plaintiffs' legitimate enforcement efforts.

30.     Upon information and belief, Defendants systematically maintain offshore bank accounts and deliberately transfer funds from their PayPal

accounts to these offshore accounts outside the jurisdiction of this Court, demonstrating a calculated scheme to shield their illicit profits from legal enforcement and recovery.

31.    Defendants, without any authorization or license from Plaintiffs, have knowingly, willfully, and deliberately counterfeited Plaintiffs' FRISBEE Trademarks in connection with the systematic advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States, including within this judicial district of Georgia, over the Internet. Each Seller Alias offers shipping to the United States, including Georgia, and, on information and belief, each Defendant has offered to sell and has sold Counterfeit Products into the United States, including Georgia. These activities constitute purposeful availment of the privilege of conducting business in Georgia and satisfy the requirements for personal jurisdiction under Georgia's long-arm statute and the United States Constitution.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING
### (15 U.S.C. § 1114)

32.    Plaintiffs repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

33.    This is a trademark infringement and counterfeiting action against Defendants based on their unauthorized use in commerce of counterfeit

imitations of the federally registered FRISBEE Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The FRISBEE Trademarks are distinctive and have acquired secondary meaning. Due to Plaintiffs' substantial and continuous investment in quality control, brand management, and product development, consumers have come to expect, rely upon, and associate the highest quality exclusively with Plaintiffs and authentic FRISBEE Products offered, sold, or marketed under the FRISBEE Trademarks. Defendants' use of counterfeit imitations of the FRISBEE Trademarks is likely to cause, and has caused, consumer confusion, mistake, and deception as to the source, origin, sponsorship, affiliation, and quality of Defendants' products.

34.    Without Plaintiffs' authorization or consent, with knowledge of Plaintiffs' well-known and prior rights in their FRISBEE Trademarks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied, and/or colorably imitated the FRISBEE Trademarks and used spurious designations that are identical with, or substantially indistinguishable from, the FRISBEE Trademarks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

35.    Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiffs, in or affecting interstate commerce, and/or have acted with willful and reckless disregard of Plaintiffs' exclusive rights in and to the FRISBEE Trademarks through their systematic and deliberate participation in such unlawful activities.

36.    Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of the FRISBEE Trademarks to packaging, point-of-purchase materials, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with, or are otherwise authorized by Plaintiffs, thereby making substantial profits and gains to which they are not entitled in law or equity.

37.    Defendants' unauthorized use of the FRISBEE Trademarks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiffs, and with deliberate intent to unfairly benefit from and damage the substantial and incalculable goodwill Plaintiffs have developed in the FRISBEE Trademarks through years of quality control and significant investment.

38.    Defendants' actions constitute willful counterfeiting of the FRISBEE Trademarks in violation of 15 U.S.C. § 1114(1)(a), and Plaintiffs are entitled to the remedies provided under 15 U.S.C. §§ 1116(d) and 1117(b)-(c).

39.    Defendants' continued, knowing, and willful use of the FRISBEE Trademarks without Plaintiffs' consent or authorization constitutes intentional infringement of the FRISBEE Trademarks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

40.    Plaintiffs have no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation, market position, and the substantial goodwill associated with the FRISBEE Trademarks. Such harm includes, but is not limited to, loss of control over product quality, damage to brand reputation, consumer confusion regarding the source and quality of FRISBEE products, and erosion of the distinctiveness

of the FRISBEE Trademarks, all of which cannot be adequately compensated by monetary damages alone.

41.    The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit FRISBEE Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN, PASSING OFF & UNFAIR COMPETITION
## (15 U.S.C. § 1125(a)/LANHAM ACT § 43(a))

42.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

43.    Defendants' promotion, marketing, offering for sale, and sale of infringing FRISBEE Products has created and is creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiffs, and as to the origin, sponsorship, or approval of Defendants' infringing products by Plaintiffs. Such confusion includes consumer belief that Defendants' products are genuine FRISBEE products manufactured or authorized by Plaintiffs, that Defendants are authorized distributors or licensees of Plaintiffs, and that the quality and characteristics of Defendants' products meet Plaintiffs' standards.

44.     By using the FRISBEE Trademarks in connection with the sale of unauthorized products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the unauthorized products.

45.     Defendants' false designation of origin and misrepresentation of fact as to the origin and sponsorship of the unauthorized products to the general public is a willful violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake, and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiffs, their FRISBEE Products, and the FRISBEE Trademarks.

47.     Plaintiffs have no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1)     That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert

with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a.  using the FRISBEE Trademarks or any reproductions, copies, or colorable imitations thereof, or any mark confusingly similar thereto, in any manner in connection with the manufacturing, importing, exporting, distribution, marketing, advertising, promotion, offering for sale, or sale of any product that is not a genuine FRISBEE Product manufactured by or under the authority of Plaintiffs or is not authorized by Plaintiffs to be sold in connection with the FRISBEE Trademarks;

    b.  passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under the FRISBEE Trademarks;

    c.  committing any acts calculated to cause consumers to believe that Defendants' Counterfeit FRISBEE Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

    d.  further infringing the FRISBEE Trademarks and damaging Plaintiffs' goodwill;

    e.  otherwise competing unfairly with Plaintiffs in any manner;

f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiffs to be sold or offered for sale, and which bear the FRISBEE Trademarks;

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Seller Aliases, or any other online marketplace account that is being used to sell products or inventory not authorized by Plaintiffs which bear the FRISBEE Trademarks;

2)  That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiffs a written report under oath setting forth in detail the manner and form in which Defendants have complied with all aspects of the injunctive relief ordered by this Court;

3)  Entry of an Order that, upon Plaintiffs' request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces, social media platforms, Facebook, YouTube, LinkedIn, Twitter, internet search engines such as Google, Bing, and Yahoo, web hosts for the Seller Aliases, and online marketplace account registrars, shall:

a.  disable and cease providing services for any accounts through which Defendants engage in the sale of products not authorized by Plaintiffs,

which bear the FRISBEE Trademarks, including but not limited to any accounts associated with the Defendants listed on Schedule A and any affiliated, related, or successor accounts;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products not authorized by Plaintiffs, which bear the FRISBEE Trademarks; and

c. take all steps necessary to prevent links to the Seller Aliases identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Seller Aliases from any search index;

4) That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' willful and unlawful acts herein alleged, and that the amount of damages for infringement be trebled pursuant to 15 U.S.C. § 1117(a) due to the exceptional nature of this case, Defendants' willful infringement, and the intentional nature of their counterfeiting activities;

5) In the alternative, that Plaintiffs be awarded statutory damages of $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(c)(2), given the willful nature of Defendants' counterfeiting activities;

6) For Judgment in favor of Plaintiffs against Defendants that they have:

a. willfully infringed Plaintiffs' rights in their federally registered trademarks pursuant to 15 U.S.C. § 1114; and b) otherwise injured Plaintiffs' business reputation and goodwill by Defendants' acts and conduct set forth in this Complaint;

7)    That Plaintiffs be awarded their reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) as this is an exceptional case; and

8)    Award such other and further relief, including temporary, preliminary and permanent injunctive relief, as this Court may deem just and proper under the circumstances and as allowed by law.


Date: October 16, 2025                    Respectfully submitted,

/s/ David M. Lilenfeld
David M. Lilenfeld
Georgia Bar No. 45299
**WHITEWOOD LAW PLLC**
5555 Glenridge Connector, Suite 200
Atlanta, GA 30342
Telephone: (404) 663-3349
Email: david@whitewoodlaw.com

Abby Neu, *pro hac vice pending*
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: (872) 294-3263
Email: aneu@whitewoodlaw.com

*Counsel for Plaintiffs*

## Schedule A

| Doe No. | Seller Name | Platform | Seller ID |
|---|---|---|---|
| 1 | anhuixingyuan | Amazon | A256KTKH8MZZ95 |
| 2 | Baodingkaihongxinshangmaoyouxiangongsi | Amazon | ATKYFM8EJ6CZD |
| 3 | Be careful | Amazon | A3IN5EGSFY8H6D |
| 4 | below | Amazon | A1IXW25TEW0ZD9 |
| 5 | Best try furniture store | Amazon | AS2SG8HXQTUDZ |
| 6 | Bolipet | Amazon | A1BMUF03C087EW |
| 7 | CGTDD | Amazon | A26R8E93GKLP9N |
| 8 | Chimoto Trading House | Amazon | AGM2ZMJDMO9WR |
| 9 | chongqingxinggoutongshangmaoyouxiangongsi | Amazon | A2ZD8SRJKOGNVH |
| 10 | chuner big | Amazon | AKEG4T06EAQZG |
| 11 | ciawerld | Amazon | A3SMO6EDAXZXX3 |
| 12 | Comfort 100 | Amazon | A2PH550JDEECS2 |
| 13 | Confidence Store | Amazon | A3DXV7HD1GSSRJ |
| 14 | Copuay | Amazon | A2TXBA5DVWVNCQ |
| 15 | Cybemage-US-Direct | Amazon | A2JHH6RONAS1GU |
| 16 | Do in fly | Amazon | A3PWZLQUXKBHIM |
| 17 | eryumengwangluo | Amazon | A1K43MQHXHOLNV |
| 18 | Female-Good-USA | Amazon | A9AZYFAXI0AGV |
| 19 | FlowhaleUS | Amazon | A3DRJIGHGYFAZL |
| 20 | GGYAYA | Amazon | A36O1BFQPV0TED |
| 21 | gnddjfcjh | Amazon | A1EQUI0ERCMJ4F |
| 22 | Guanfanlong Trading | Amazon | A2KRYB29Z35LWX |
| 23 | Health Management | Amazon | A1Z8FIVWA82AI3 |
| 24 | Heuch | Amazon | ADX3IIS0L82AL |
| 25 | Hilary Louis | Amazon | A2YPXG5JK1MMOA |
| 26 | home deshan | Amazon | AVTUVHRN99M2Z |
| 27 | HRBLY-YXGS | Amazon | A3PQDRO5W5Y90U |
| 28 | HuiGuangSM | Amazon | A1MMA8VZFQO3RW |
| 29 | iDotha-US | Amazon | AL6UAB62TOE4C |
| 30 | JENNY | Amazon | APESKWHKCRS9V |

| Doe No. | Seller Name | Platform | Seller ID |
|---|---|---|---|
| 31 | Jialing | Amazon | A2SMLQZFFB2HTK |
| 32 | Jian Xiang | Amazon | AHEMCIG6J8K41 |
| 33 | Jiazawa store | Amazon | A358M59HWXTI8P |
| 34 | Jingxinyun | Amazon | A3MSQDTQP54R5J |
| 35 | JOY | Amazon | A219J6MB8J8NJC |
| 36 | juequequstore | Amazon | AAZB1Y2P0E2DI |
| 37 | KM Export | Amazon | A14ODZHKP8VKKL |
| 38 | KPJKKJ-US | Amazon | A2R8B80Z4TYDER |
| 39 | kuajingfabaihuoshangmaoyouxiangongsi | Amazon | AIVC7P2686K7H |
| 40 | Kyiwxs flagship store | Amazon | A12AGDR2XJKGI6 |
| 41 | lcl Small store | Amazon | A3LBEH6ISCMTRZ |
| 42 | LEKAMXING Electronic Technology Co., Ltd | Amazon | A3OWQM3JVT6237 |
| 43 | LeuwiMox | Amazon | A2V5IH9KEE2TF |
| 44 | LingFengX | Amazon | A1OI10U41CO972 |
| 45 | MOZHENZHI | Amazon | AKVW2DKZVAMKF |
| 46 | Mumuoo | Amazon | A2IK2MXXP70E3M |
| 47 | Paologis Atomired | Amazon | A203OS7LM00VYU |
| 48 | Paws & Whiskers Shop | Amazon | A3A9DDF0UEQPYX |
| 49 | QIYONGQI | Amazon | A2HOY7PNF62DZ0 |
| 50 | Quinn Guy | Amazon | A241C7XE2I2K0A |
| 51 | RiverDolphin | Amazon | A4YDY0VST83J0 |
| 52 | Shenzhen Shenwan Design Co., Ltd. | Amazon | A1FYCFIBPFNAO4 |
| 53 | shree shyam ji us | Amazon | A3UY8TOREDQ6DK |
| 54 | Shuwen's Mall | Amazon | AIA258RHBT291 |
| 55 | Sunqian Shop | Amazon | ARB5T0OL2IS8A |
| 56 | SXLBZshop | Amazon | A2N9VC69EZKEX |
| 57 | Tamily | Amazon | A24CHUMU00KPPG |
| 58 | TOGM | Amazon | A2YCJ4C9EG73GS |
| 59 | TondooStore | Amazon | A5PVIIS2QJ5VI |
| 60 | Tribot | Amazon | A10ZB8MMK2UYLG |
| 61 | tuicare home | Amazon | A3URCL1LZFPSHA |

| Doe No. | Seller Name | Platform | Seller ID |
|---|---|---|---|
| 62 | TuoHanM | Amazon | A16Z9HB515XAXJ |
| 63 | Umoletech-US | Amazon | A11KNER8U363G3 |
| 64 | victoriajs | Amazon | A2PE4RKSOBODWY |
| 65 | Watch | Amazon | A3L0ALC3BGIRBT |
| 66 | winind | Amazon | A239ARZIR4C2SR |
| 67 | wishlist | Amazon | A3FJ53I7X6EVB0 |
| 68 | xiajinsumidianzishangwuyouxiangongsi | Amazon | A1H9TW3MZP4PMA |
| 69 | yewenqinxiaodian | Amazon | A3PCGXEVA9JL3M |
| 70 | YongXBH | Amazon | A395VEPEW2PN33 |
| 71 | ZANGJINBAO | Amazon | A3FQWXDYDQ0EU8 |
| 72 | zanshengyou | Amazon | AFMYRE60LKLRO |
| 73 | ZhaoJ | Amazon | A7CAEE48Z5UZU |
| 74 | zhixinruanjiankeji | Amazon | A3AXVEH21ZXGFP |
| 75 | 3DOEX | Walmart | 102754012 |
| 76 | autopartcar6 | Walmart | 101640116 |
| 77 | BAIVAKON | Walmart | 101551311 |
| 78 | Bangduola Electronic Tech Trade Co.Ltd | Walmart | 101173368 |
| 79 | BC Babycare | Walmart | 101338448 |
| 80 | BearLil Outdoor | Walmart | 101585164 |
| 81 | BlissfulBliss | Walmart | 102485202 |
| 82 | CanzaoTech | Walmart | 102774551 |
| 83 | Charkool Store | Walmart | 101669757 |
| 84 | Cixusio | Walmart | 102824224 |
| 85 | Comfort Space | Walmart | 102513739 |
| 86 | consflyus | Walmart | 102530266 |
| 87 | dongguanshijinghaokeji | Walmart | 102759853 |
| 88 | dongguanshilvjinbaihuo | Walmart | 102891120 |
| 89 | EliteEmporium | Walmart | 101681721 |
| 90 | Fcm8wfa.LLOC | Walmart | 102646152 |
| 91 | foshanshijixushuashangmao | Walmart | 102484163 |
| 92 | gansujinshengmaoyi | Walmart | 102772038 |

| Doe No. | Seller Name | Platform | Seller ID |
|---|---|---|---|
| 93 | GoldenGrove | Walmart | 102486526 |
| 94 | GSX-US | Walmart | 102496248 |
| 95 | GuangLan | Walmart | 102603939 |
| 96 | guangzhoufangyumaoyi | Walmart | 101693599 |
| 97 | guangzhoutaichengtudaxi | Walmart | 101671563 |
| 98 | guangzhouyanting | Walmart | 102823719 |
| 99 | haibingchuangkeji | Walmart | 102581353 |
| 100 | HEAL LiNE Decoration | Walmart | 101689202 |
| 101 | HHOL | Walmart | 102777818 |
| 102 | HomeHaven Essentials | Walmart | 101672601 |
| 103 | huachang | Walmart | 102672736 |
| 104 | huangyiting | Walmart | 102807453 |
| 105 | Huaqiet | Walmart | 102606887 |
| 106 | hubeishengbaokunlun | Walmart | 102846504 |
| 107 | iChao Shop | Walmart | 101692611 |
| 108 | ITOCHI POWER | Walmart | 102485063 |
| 109 | jianlibaihuo | Walmart | 102823424 |
| 110 | jiarongone | Walmart | 101648965 |
| 111 | JINBAY | Walmart | 102769809 |
| 112 | jinduoy | Walmart | 102709432 |
| 113 | JJYPstore | Walmart | 101640857 |
| 114 | JPIA | Walmart | 102835298 |
| 115 | KCwan Shop | Walmart | 102793613 |
| 116 | Kinx0844 | Walmart | 102835793 |
| 117 | Kwai En Trading | Walmart | 102763901 |
| 118 | langyinge | Walmart | 102779584 |
| 119 | Leozcaa | Walmart | 102501116 |
| 120 | lixinssshangmao | Walmart | 102514642 |
| 121 | Lodemi Living | Walmart | 102517411 |
| 122 | Lucky come | Walmart | 102517551 |
| 123 | Lucky Star163 | Walmart | 102841164 |

| Doe No. | Seller Name | Platform | Seller ID |
|---------|-------------|----------|-----------|
| 124 | Mag | Walmart | 102890899 |
| 125 | MaL | Walmart | 102855785 |
| 126 | manuoyu | Walmart | 101655958 |
| 127 | MASI | Walmart | 102856068 |
| 128 | meidun | Walmart | 101682786 |
| 129 | MiLuoDianZi | Walmart | 102517343 |
| 130 | OEFNTAC | Walmart | 101637128 |
| 131 | Omeite | Walmart | 102639766 |
| 132 | Osaiv Store | Walmart | 102729609 |
| 133 | PeachRisk | Walmart | 102761243 |
| 134 | PeachWang | Walmart | 102805441 |
| 135 | Puniama | Walmart | 101599347 |
| 136 | Puton Shop | Walmart | 102756590 |
| 137 | QINIUXO | Walmart | 102527558 |
| 138 | Qinqin Chen | Walmart | 102842373 |
| 139 | qiujuanshangmao | Walmart | 102484135 |
| 140 | QKOO | Walmart | 101184614 |
| 141 | QUEENTRADE | Walmart | 101099075 |
| 142 | ranGu | Walmart | 102823684 |
| 143 | RecordShow | Walmart | 102769633 |
| 144 | RTSY-US | Walmart | 102517464 |
| 145 | RuiXinXing | Walmart | 102786522 |
| 146 | Salmenta | Walmart | 101679016 |
| 147 | SEMEZUXX | Walmart | 101247802 |
| 148 | Sett | Walmart | 102855496 |
| 149 | Sheng Xiao | Walmart | 102842211 |
| 150 | shenzhenshixinwanshengkejiyouxiangongsi | Walmart | 102620514 |
| 151 | shijiazhuangchenzhushangmaoLTD | Walmart | 101694194 |
| 152 | Shionter | Walmart | 102616424 |
| 153 | shuangxishang | Walmart | 101655099 |
| 154 | shuocigen | Walmart | 101639520 |

| Doe No. | Seller Name | Platform | Seller ID |
|---|---|---|---|
| 155 | straosngz | Walmart | 102498667 |
| 156 | TaiYuanGangNuo | Walmart | 101684242 |
| 157 | TINGJA Gift Shop | Walmart | 102493092 |
| 158 | tuankatrade | Walmart | 102495098 |
| 159 | Vaupan | Walmart | 101097649 |
| 160 | wenzhouxunyuanqichebujianyouxiangongsi | Walmart | 101654826 |
| 161 | Wind Girl | Walmart | 102855477 |
| 162 | wuxuanhongshengdatouzi | Walmart | 102635026 |
| 163 | XIANGDONGDIDI | Walmart | 101621124 |
| 164 | xiaoxuanting987 | Walmart | 102491162 |
| 165 | Yadam | Walmart | 102513608 |
| 166 | YAHUI Co. Ltd | Walmart | 101311581 |
| 167 | Yajing Tech | Walmart | 102576178 |
| 168 | YanMing | Walmart | 102814970 |
| 169 | YANXIp | Walmart | 102826512 |
| 170 | Yiming Li | Walmart | 102841391 |
| 171 | Yishuai | Walmart | 102841592 |
| 172 | YJZZ | Walmart | 101638892 |
| 173 | Young Marshal Standing | Walmart | 102866556 |
| 174 | Yu Boutique Store | Walmart | 101668740 |
| 175 | YUAOUK-US | Walmart | 101527288 |
| 176 | yuchen001 | Walmart | 102856000 |
| 177 | Yucong Trading | Walmart | 101689247 |
| 178 | ZCL Trading | Walmart | 101695201 |
| 179 | zozo | Walmart | 102841601 |
| 180 | Zworthy | Walmart | 101620862 |
| 181 | zynion | Walmart | 102878486 |
| 182 | AffordableStylishPants | Temu | 634418219460855 |
| 183 | AiryWare | Temu | 634418224260241 |
| 184 | ANNY FAMOUS | Temu | 686285984400 |
| 185 | AS GOOD | Temu | 634418214380857 |

| Doe No. | Seller Name | Platform | Seller ID |
|---|---|---|---|
| 186 | ASFASFDDD | Temu | 634418224453517 |
| 187 | babishu | Temu | 634418221889138 |
| 188 | baihuolingshi shop | Temu | 634418224689519 |
| 189 | Bestnova | Temu | 2273447026349 |
| 190 | BloomBoXA | Temu | 634418224185716 |
| 191 | BudgetBliss FY | Temu | 634418224079191 |
| 192 | BYTEBARGAIN | Temu | 634418224652811 |
| 193 | Chuanghaigy | Temu | 634418224324092 |
| 194 | City of Love cjw | Temu | 634418220249958 |
| 195 | CM hardware tools | Temu | 4846427840565 |
| 196 | CODOEJBN | Temu | 634418223782365 |
| 197 | CPDDP | Temu | 634418222532831 |
| 198 | CSTZAA | Temu | 634418224006957 |
| 199 | CSTZJCP | Temu | 634418224132808 |
| 200 | cuipei | Temu | 634418224581030 |
| 201 | CurioBox | Temu | 634418220281212 |
| 202 | dasjn | Temu | 634418223606051 |
| 203 | DFSDFSGDSDG | Temu | 634418224453989 |
| 204 | EcIat EmPaorium | Temu | 634418225284421 |
| 205 | Erics autumn | Temu | 634418225008471 |
| 206 | EveningRain | Temu | 634418223770972 |
| 207 | FASSNOW SIST | Temu | 634418223826348 |
| 208 | gkbd | Temu | 634418223840929 |
| 209 | GridHoCo | Temu | 634418224178111 |
| 210 | Halemon | Temu | 634418220483997 |
| 211 | hanhuanshang | Temu | 634418224482548 |
| 212 | HAOSHPLO | Temu | 634418223715191 |
| 213 | HAOYUNLAILA SHOP | Temu | 634418223966492 |
| 214 | HD Magic mirror | Temu | 1960353299864 |
| 215 | hejiaxian | Temu | 634418223385377 |
| 216 | hemeiixngthree | Temu | 634418224878473 |

| Doe No. | Seller Name | Platform | Seller ID |
|---|---|---|---|
| 217 | HGJIPEMG | Temu | 634418223758446 |
| 218 | hhhhhaAiii | Temu | 634418222575709 |
| 219 | Home of the Cute Pets Pet Shop | Temu | 4042166892435 |
| 220 | HomeHavenThriftThrill | Temu | 634418224079431 |
| 221 | HSIUDHCB | Temu | 634418222544867 |
| 222 | Jiayou Wangchong Living Museum | Temu | 4335175514413 |
| 223 | jietudong | Temu | 634418224419989 |
| 224 | jinlinjunhuodian | Temu | 634418223681976 |
| 225 | JiQiLi Shop | Temu | 634418225036391 |
| 226 | JPS HOME | Temu | 634418218531472 |
| 227 | JTTNLVTT | Temu | 634418224985090 |
| 228 | JumbledDish | Temu | 634418223574939 |
| 229 | Koadac Pet Store | Temu | 5123259164 |
| 230 | kouminyou | Temu | 634418224688593 |
| 231 | LanXingWLKJ | Temu | 634418224330940 |
| 232 | LeafyCove | Temu | 634418223815145 |
| 233 | LeapMotion | Temu | 634418224222432 |
| 234 | Leopartr | Temu | 634418225174560 |
| 235 | LHLUJDOWJND | Temu | 634418223866573 |
| 236 | LIINXC | Temu | 634418224023980 |
| 237 | lijuanshoper | Temu | 634418224304039 |
| 238 | LinLL | Temu | 634418222528544 |
| 239 | LK General Merchandise | Temu | 5519410983315 |
| 240 | LLDP SHOP | Temu | 634418224394833 |
| 241 | LOIAUENFH | Temu | 634418223942396 |
| 242 | Lorapriti | Temu | 634418216133884 |
| 243 | LoveBespoke | Temu | 634418223025095 |
| 244 | luoyiyouxuan | Temu | 634418224049240 |
| 245 | LWXty | Temu | 634418223792214 |
| 246 | LYQ Shopping | Temu | 634418223875193 |
| 247 | Ma Jia Hui | Temu | 634418221847110 |

| Doe No. | Seller Name | Platform | Seller ID |
|---|---|---|---|
| 248 | majiaxiangbao | Temu | 634418224218654 |
| 249 | Make Waves | Temu | 5157644746421 |
| 250 | MANYOUYISI JUBAO | Temu | 634418211277734 |
| 251 | Martinst | Temu | 634418223822310 |
| 252 | mchenming | Temu | 634418223488170 |
| 253 | MirageLace | Temu | 634418223849660 |
| 254 | Morningbird | Temu | 4374431310630 |
| 255 | Mutual Health | Temu | 634418219398569 |
| 256 | muweijin | Temu | 634418224263489 |
| 257 | Nanao outdoor supplies | Temu | 634418212565164 |
| 258 | ourhouser | Temu | 634418220165459 |
| 259 | PARATECH local | Temu | 634418220515899 |
| 260 | PET ANIMAL HOUSE | Temu | 304906074398 |
| 261 | PetCrafts | Temu | 634418224330952 |
| 262 | Prospres | Temu | 634418223018174 |
| 263 | pyxiaoyu | Temu | 634418223442862 |
| 264 | qianyantwo | Temu | 634418224725221 |
| 265 | qiubing | Temu | 634418222498963 |
| 266 | QTGCAGBP | Temu | 634418225229072 |
| 267 | Quality Life items | Temu | 634418218511045 |
| 268 | rbvkjdc | Temu | 634418223982121 |
| 269 | Regalgo | Temu | 634418223548284 |
| 270 | Richomes | Temu | 634418222569337 |
| 271 | rongfajituaneight | Temu | 634418224340482 |
| 272 | rongfajituanthththree | Temu | 634418223521542 |
| 273 | Rongyunlai | Temu | 634418219168239 |
| 274 | RSND | Temu | 634418223924911 |
| 275 | Runaway Wheel | Temu | 634418218398920 |
| 276 | Sanmuke | Temu | 634418213334894 |
| 277 | SharpTide | Temu | 634418224889073 |
| 278 | Shenzhen Luohu clothing | Temu | 2643559096104 |

| Doe No. | Seller Name | Platform | Seller ID |
|---|---|---|---|
| 279 | Shines summer | Temu | 634418225010793 |
| 280 | Shining accessory gathering point | Temu | 634418217298760 |
| 281 | shoppingstar | Temu | 634418223915096 |
| 282 | Short Sleeved Tshirt shop | Temu | 634418222668925 |
| 283 | slgoogg | Temu | 634418222705887 |
| 284 | snssi local | Temu | 634418223742126 |
| 285 | SOPDIOWNU | Temu | 634418223809946 |
| 286 | SparkleFunToys | Temu | 634418220169387 |
| 287 | ssojs | Temu | 634418224855204 |
| 288 | SXGFOIWM | Temu | 634418223973263 |
| 289 | Taozi homefurnishingdaily hall | Temu | 3871734827822 |
| 290 | TAPUSEN | Temu | 260551078119 |
| 291 | taxiaogang | Temu | 634418224512357 |
| 292 | The Bella A | Temu | 634418221680294 |
| 293 | The power of water | Temu | 5285099778899 |
| 294 | Therro | Temu | 634418222667583 |
| 295 | TIANCRXT TRADING | Temu | 634418224957075 |
| 296 | tianlouquan | Temu | 634418224689624 |
| 297 | Trevor JiKang | Temu | 277441933574 |
| 298 | trgevehb | Temu | 634418223632336 |
| 299 | Tyute Light local | Temu | 634418215746879 |
| 300 | UniMart F | Temu | 634418224786447 |
| 301 | Vacodlove | Temu | 634418218568343 |
| 302 | Very kuai | Temu | 70582537372 |
| 303 | VivaCrafts | Temu | 634418224037944 |
| 304 | VOPMIH | Temu | 634418224025447 |
| 305 | VWPARTS | Temu | 253747509588 |
| 306 | WANDAR | Temu | 634418219545654 |
| 307 | wangmengnan | Temu | 634418224997982 |
| 308 | WANGMH | Temu | 634418223545625 |
| 309 | WANGYANMAII | Temu | 634418222862399 |

| Doe No. | Seller Name | Platform | Seller ID |
|---|---|---|---|
| 310 | wangyihonghaowu | Temu | 634418220883512 |
| 311 | WEDOC Pet Supplies Pet | Temu | 130824684694 |
| 312 | WEIYIF TRADING | Temu | 634418224580927 |
| 313 | wenjuseven | Temu | 634418224253306 |
| 314 | Windbird outdoors | Temu | 6186280821323 |
| 315 | wuhuiyou | Temu | 634418224689604 |
| 316 | wuyangyangshanghang | Temu | 634418224450253 |
| 317 | WWDDYY | Temu | 634418224381066 |
| 318 | xgfy | Temu | 634418223621646 |
| 319 | XinshunxiangUS | Temu | 634418220852253 |
| 320 | Xixi department | Temu | 376495865213 |
| 321 | xscd | Temu | 634418223924320 |
| 322 | XT good product | Temu | 5069935404192 |
| 323 | xuandui | Temu | 634418224374326 |
| 324 | xulimin | Temu | 634418223655262 |
| 325 | xuliminzahuo | Temu | 634418223653675 |
| 326 | XUNBINGFFF | Temu | 634418224293526 |
| 327 | xywenfang | Temu | 634418223931046 |
| 328 | XZCADCE | Temu | 634418223463535 |
| 329 | xzqdp | Temu | 634418223659094 |
| 330 | YANGTESANGETI | Temu | 634418224100617 |
| 331 | yantenshop | Temu | 634418223759201 |
| 332 | YEELASS STORAGE | Temu | 634418214863167 |
| 333 | YEEQIU | Temu | 634418222100915 |
| 334 | yexiaofengdianzi | Temu | 634418223496216 |
| 335 | YHappyCart Shop | Temu | 634418225033663 |
| 336 | Yimei Trading Firm | Temu | 634418222713254 |
| 337 | YIQISHENG PET | Temu | 5003359298518 |
| 338 | YiyeT | Temu | 634418222651481 |
| 339 | yueguolinbaihuo | Temu | 634418224861527 |
| 340 | YuxiT | Temu | 634418222650996 |

| Doe No. | Seller Name | Platform | Seller ID |
|---|---|---|---|
| 341 | yuzhiqinABCD | Temu | 634418224196308 |
| 342 | YYOOPPWW | Temu | 634418224161780 |
| 343 | yyyeet | Temu | 634418222529494 |
| 344 | yzbdb | Temu | 634418223963514 |
| 345 | zhenyece | Temu | 634418224662967 |
| 346 | Zhous Pet Products Supermarke | Temu | 5808564986104 |
| 347 | zhouzuhui | Temu | 634418224387991 |
| 348 | ZLXOBG | Temu | 634418224669206 |
| 349 | ZMKEBG | Temu | 634418224604742 |
| 350 | ZRMShop | Temu | 634418224192675 |